IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| OBIE EARL TUTT, II, #02105206 | § | |
| | § | CIVIL ACTION NO. 2:19cv245 |
| VS. | | CONSOLIDATED WITH |
| | § | CIVIL ACITON 2:19cv295 |
| DIRECTOR, TDCJ-CID | § | |

### REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Obie Earl Tutt, II, a prisoner confined at the Coffield Unit within the Texas Department of Criminal Justice (TDCJ) proceeding *pro se*, filed this federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging 2016 convictions from Upshur County, Texas. The petition was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the petition.

For reasons explained below, the Court recommends that Tutt's petition be denied, the case be dismissed with prejudice, and that he be denied a certificate of appealability *sua sponte*.

**I. Procedural History**

In two separate cause numbers ultimately tried together, the State of Texas alleged, in case number 17-369, that Tutt—intentionally and knowingly—(1) committed aggravated sexual assault of a child (Doe) under the age of fourteen, by penetrating her sexual organ with his finger, (2) committed aggravated sexual assault of Doe, a child under fourteen years of age, by causing her sexual organ to contact his mouth, (3) committed indecency of a child by sexual contact by touching the genitals of Doe, a child under seventeen years of age, and (4) committed indecency with a child by causing Doe, a child under seventeen years of age, to contact his genitals. *See Tutt*

1

*v. State*, 2017 WL 2664441, at *1 (Tex. App.—Texarkana 2017, pet. ref'd) (direct appeal). In the companion case, case number 17-368, Tutt was charged with two counts of indecency with a child.

After pleading guilty to two counts, a jury found him guilty of the remaining counts. Ultimately, Tutt was sentenced on November 17, 2017, to sixty years' imprisonment on count one, thirty-five years' imprisonment on count two, twenty years' imprisonment on count three, and fifteen years' imprisonment for count four in case number 17-369, (Dkt. #10, pg. id. # 863). In the companion case, 17-368, Tutt was sentenced to twenty years' imprisonment and fifteen years' imprisonment, (Dkt. #10, pg. id. #504-09). TDCJ records indicate that Tutt's maximum sentence date is November 12, 2181.

Tutt filed two direct appeals, and the Court of Appeal in Texarkana affirmed the judgments in written opinions. *See Tutt*, 2017 WL 2664441, at *2; *Tutt v. State*, 2017 WL 2664439, at *2 (Tex. App.—Texarkana, 2017, pet. ref'd). He then sought discretionary review, which the Texas Court of Criminal Appeals refused on November 22, 2017. Tutt filed a state habeas application, and the Texas Court of Criminal Appeals denied the application without written order on June 5, 2019, (Dkt. #10, pg. id. #744). Tutt subsequently filed this federal habeas petition on June 23, 2019, pursuant to the mailbox rule.

## II. Tutt's Federal Habeas Petition

Tutt raises three claims of ineffective assistance of trial counsel and two claims of trial court error. Specifically, he first maintains that trial counsel failed to (1) suppress unlawfully obtained evidence in the form of his verbal statements to law enforcement, (2) obtain expert witness testimony, and (3) file a motion to sever his guilty pleas from the not-guilty pleas, (Dkt. #1). Tutt also asserts that the trial court erred by (1) violating his right to a fair trial when the

District Attorney's Intern entered the jury room and spoke to a jury, and (2) denying his motion for a mistrial. Tutt seeks a new trial and that his pleas be severed.

### III. Respondent's Answer

After being ordered to do so, Respondent filed an answer, (Dkt. #15), addressing Tutt's habeas petition. Respondent argues that Tutt's claims of ineffective assistance of counsel are without merit and that Tutt was not denied a fair trial. Tutt has not filed a response; therefore, under 28 U.S.C. § 2248, the factual allegations of the answer are taken as true except to the extent that the Court finds from the evidence that they are not true.

### IV. Factual Background

The Court of Appeals in Texarkana outlined some of the facts as follows:

> At trial, Doe testified that Tutt grabbed her genitals and also penetrated her sexual organ. She also told the jury that Tutt had sexually abused her "[a]bout twice a month" over the course of two years. Doe added that Tutt touched her "[s]ometimes in the living room" and at other times in her room. When asked whether she saw Tutt's genitals during these occurrences, Doe answered, "[S]ometimes."

*Tutt*, 2017 WL 2664441, at *2.

### V. Standard of Review

*1. Federal Habeas Review*

The role of federal courts in reviewing habeas petitions filed by state prisoners is exceedingly narrow. A prisoner seeking federal habeas corpus review must assert a violation of a federal constitutional right; federal relief is unavailable to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *See Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993); *see also Estelle v. McGuire*, 503 F.3d 408, 413 (5th Cir. 2007) ("We first note that 'federal habeas corpus relief does not lie for errors of state law.'") (internal citation

3

omitted). When reviewing state proceedings, a federal court will not act as a "super state supreme court" to review error under state law. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

Federal habeas review of state court proceedings is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. Under the AEDPA, which imposed several habeas corpus reforms, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). The AEDPA imposes a "highly deferential standard for evaluating state court rulings," which demands that federal courts give state court decisions "the benefit of the doubt." *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted); *see also Cardenas v. Stephens*, 820 F.3d 197, 201-02 (5th Cir. 2016) ("Federal review under the AEDPA is therefore highly deferential: The question is not whether we, in our independent judgment, believe that the state court reached the wrong result. Rather, we ask only whether the state court's judgment was so obviously incorrect as to be an objectively unreasonable resolution of the claim."). Given the highly deferential standard, a state court's findings of fact are entitled to a presumption of correctness and a petitioner can only overcome that burden through clear and convincing evidence. *Reed v. Quarterman*, 504 F.3d 465, 490 (5th Cir. 2007).

*2. Ineffective Assistance of Counsel*

To show that trial counsel was ineffective, Tutt must demonstrate both deficient performance and ensuing prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). In

4

evaluating whether an attorney's conduct was deficient, the question becomes whether the attorney's conduct fell below an objective standard of reasonableness based on "prevailing norms of practice." *See Loden v. McCarty*, 778 F.3d 484, 494 (5th Cir. 2016).

Moreover, to establish prejudice, the petitioner must show that there is a reasonable probability that—absent counsel's deficient performance—the outcome or result of the proceedings would have been different. *Id.*; *see also Reed v. Stephens*, 739 F.3d 753, 773 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687)). It is well-settled that a "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 U.S. at 694. Importantly, the petitioner alleging ineffective assistance must show both deficient performance and prejudice. *See Charles v. Stephens*, 736 F.3d 380, 388 (5th Cir. 2013) ("A failure to establish either element is fatal to a petitioner's claim.") (internal citation omitted). Given the already highly deferential standard under the AEDPA, establishing a state court's application whether counsel was ineffective "is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also Charles*, 736 F.3d at 389 ("Both the *Strickland* standard and the AEDPA standard are highly deferential, and when the two apply in tandem, review is doubly so.") (internal quotations and citation omitted).

**VI. Discussion and Analysis**

Tutt raises three claims concerning ineffective assistance of counsel and two claims of trial court error.

<u>1. Ineffective Assistance Claims</u>

To prevail on these claims, as mentioned, Tutt must show *both* deficient performance and ensuing prejudice. *See United States v. Lagos*, 25 F.4th 329, 334 (5th Cir. 2022) (explaining a court, at its discretion, may choose to address only one prong, "put differently, '[i]f it is easier to

5

dispose of an ineffectiveness claim' on 'prejudice' rather than 'performance' grounds, or vice versa, then 'that course should be followed.'") (emphasis added); *United States v. Spear*, 2022 WL 1565350, at *1 (5th Cir. 2022) (unpublished) ("A habeas petitioner has the burden of proving both prongs of the *Strickland* test.").

*a. Failure to Suppress Unlawfully Obtained Evidence & Expert Testimony*

Tutt first maintains that that counsel was ineffective for failing to suppress unlawfully obtained evidence. Specifically, he maintains the following:

> Petitioner[']s unlawfully obtained statements were used to convict him. He never signed a waiver nor was he ever informed as to his right to counsel. Trial counsel allowed Petitioner[']s statements in unobjected when statements could have been suppressed.

(Dkt. #1, pg. 6). In ground two, Tutt further argues that counsel was ineffective for failing to obtain expert testimony. He elaborates by stating that during a pre-trial hearing, his trial counsel acknowledged that Tutt's "unstable grasp of reality due to his mental issues." *Id*. Tutt argues that his voluntariness and mental state—"when unlawfully obtained statements were [elicited]"—are "in question." *Id*. Counsel failed to procure expert witness testimony "as any sound attorney would." *Id*.

In his memorandum of law, (Dkt. #4), Tutt elaborates further on this claim. Without including his legal citations, Tutt articulates the following:

> During early stages of the investigation, lead Detective Fitzgerald contacts Mr. Tutt. Detective Fitzgerald informs Mr. Tutt of allegations against him. Detective Fitzgerald then bullies Mr. Tutt into showing up to be interviewed at which time he solicits a confession. Not once was Mr. Tutt informed of his right to counsel. That the moment Detective Fitzgerald called Mr. Tutt for an interview[,] Mr. Tutt went from being a "suspect" to being the "accused." Petitioner further argues that it is at that specific moment that Mr. Tutt should have been informed of his right to counsel and Detective Fitzgerald should not have [initiated] the interview. Defense counsel acknowledges the need to suppress the interview and initially filed a motion to suppress.
>
> . . .

6

> At the commencement of trial there was no plea agreement reached. Counsel failed to re-file the motion to suppress, and the confession played a key role in convicting Petitioner. Had counsel re-filed the motion to suppress, the confession would have been deemed inadmissible under Texas Code of Criminal Procedure 38.22 Sect. 6. Petitioner's voluntariness is questionable due to the fact that the confession was given just hours after being released.

(Dkt. #4, pg. 2).

In response, Respondent asserts that Tutt's claims concern his belief that trial counsel "should have filed a motion to suppress the statements he gave to Investigator Fitzgerald based on Investigator Fitzgerald's failure to Mirandize him and on Tutt's mental capacity," (Dkt. #11, pg. 9). Specifically, Respondent explains that defense counsel withdrew a motion to suppress during a pre-trial hearing and that the record shows that Investigator Fitzgerald testified that Tutt's statements were made freely and voluntarily—and that Tutt was not under arrest. Moreover, Tutt testified at trial that his interview was voluntary. Ultimately, Respondent argues that Tutt fails to show that any expert witness would have testified favorably on his behalf regarding the statements.

Tutt raised these claims in his state habeas application, (Dkt. #10, pg. id. #791;797). The Texas Court of Criminal Appeals denied his application without written order. The implicit rejection of his claims is entitled to deference under the AEDPA—even if the state habeas court failed to enter findings of fact and conclusions of law. The failure to enter express findings of fact does not preclude deference under the AEDPA because "[a]s a federal court, we are bound by the state habeas court's factual findings, both implicit and explicit." *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *see also Becerril v. Quarterman*, 2007 WL 1701869 *4 (S.D. Tex.—Houston Jun. 11, 2007) ("The Texas Court of Criminal Appeals adopted the trial court's findings when it denied relief. A federal court is bound by the state habeas court's factual findings, both implicit and explicit.") (citation omitted).

In Texas, when the Court of Criminal Appeals denies a state habeas petition—with or without an order or opinion—the "denial" means that the court addressed and rejected the merits of a particular claim. *See Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claims merits."); *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) ("Under Texas law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of the claim.").

Here, the Texas Court of Criminal Appeals denied Tutt's state habeas application. Accordingly, the state court addressed and rejected the merits of these two habeas claims—irrespective of whether the state habeas court entered explicit findings. Those findings and conclusions are entitled to a presumption of correctness on federal habeas review and the petitioner has the burden of overcoming this presumption. *See Carter v. Collins*, 918 F.2d 1198, 1202 (5th Cir. 1990).

28 U.S.C. § 2254(e)(1) provides the following:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Under this statute, then, only one avenue exists in which a federal court can ignore state fact findings: When the petitioner rebuts the presumption of correctness by clear and convincing evidence. Because the court denied relief on the merits of Tutt's claims, he is bound by section 2254 and must show that the state court's adjudication of his claims resulted in a decision which was contrary to or involved an unreasonable application of clearly established federal law—as established by the Supreme Court, or resulted in a decision based upon an unreasonable

8

determination of the facts in light of the evidence presented in the state court proceedings. *See Rivera v. Quarterman*, 505 F.3d 349, 356 (5th Cir. 2007).

A review of the entire record and pleadings shows that Tutt failed to overcome the presumption of correctness. With respect to his claim that trial counsel was ineffective for failing to suppress his statement to Investigator Fitzgerald, such claim is without merit. In order to show that counsel was ineffective for failing to file a motion to suppress, the petitioner must show that the motion would have been meritorious. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (holding that when an ineffectiveness claim is grounded on counsel's alleged failure to litigate a Fourth Amendment claim, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."); *Jackson v. Thaler*, 358 F. App'x 585, 586 (5th Cir. 2009) (unpublished) ("An attorney's failure to file a motion to suppress may constitute deficient performance if the evidence would have been suppressed as a result of the motion.") (citing *Ward v. Dretke*, 420 F.3d 479, 488 (5th Cir. 2005)).

Moreover, firm declarations in open court—including a plea colloquy—carry a strong presumption of verity. *See United States v. Perez*, 690 F. App'x 191, 192 (5th Cir. 2017) (Mem.) ("A defendant's solemn declarations in open court carry a strong presumption of truth.") (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). As a result, the movant faces the heavy burden of proving that he is entitled to relief through overcoming the evidence of his own words. *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *see also United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986) (holding that there must be independent indicia of the likely merit of the petitioner's contentions; mere contradiction of the statements made at the guilty plea proceeding will not suffice).

The trial transcript includes testimony from both Investigator Fitzgerald and Tutt—and shows that Tutt cannot overcome the veracity of his sworn words during the trial. Investigator Fitzgerald testified that he conducted a recorded and voluntary interview with Tutt. Specifically, he testified that at the time of the interview, Tutt was not under arrest and voluntarily and freely came to his office to "provide his version of the facts," (Dkt. #10, pg. id. #222-23). Fitzgerald testified that during the course of the testimony, Tutt admitted to taking photographs of the victim with his phone under the door, but deleted them because "it didn't turn out." *Id*. at pg. id. #224. He also admitted that he left the house, with a gun, to search for her—further admitting that "he was hunting her down to find her." *Id*. at pg. id. #225. Fitzgerald testified that Tutt was free to leave at the time, and law enforcement obtained an arrest warrant at a different time.

Tutt testified at trial that he was not required to speak to Fitzgerald and that Fitzgerald explained him his rights and that he was "free to walk out the door at that time." Tutt admitted that he was not under arrest during his interview, *Miranda* warnings were not given, but that he understood that he had an opportunity to speak with an attorney before he came in and spoke to Fitzgerald. *Id*. at pg. id. #253-54.

Here, Tutt cannot show that any motion to suppress his statements to Fitzgerald would have been meritorious or that the outcome of the proceedings would have been different. While he now argues that he was "bullied" and his statements were obtained "unlawfully," he testified under oath at trial that he understood that he had an opportunity to speak with an attorney before going to Fitzgerald's office for an interview, that he was free to leave, was informed of his rights, and that he was not required to speak to Fitzgerald in the first place. Tutt has not overcome his own sworn words at trial, as he now merely attempts to contradict his own testimony through conclusory

10

allegations. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (explaining that mere "conclusory allegations do not raise a constitutional issue in a habeas proceeding.").

To the extent Tutt maintains that his interview turned into a custodial interrogation, such claim is without merit. *Miranda* warnings must be administered prior to a "custodial interrogation." *See United States v. Bengiyenga*, 845 F.2d 593, 595 (5th Cir. 1988) (en banc) (quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). For *Miranda* purposes, a suspect is considered "in custody" when placed under formal arrest or when a reasonable person in the suspect's position "would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id*. at 596.

In other words, the basic test is one that involves the totality of the circumstances, and the Fifth Circuit has stated that "[i]n general, we have held that custodial interrogation requires some combination of isolation, restriction of movement, physical restraint, and coercive technique." *United States v. Salinas*, 543 F. App'x 458, 463 (5th Cir. 2013) (unpublished). Some factors in determining whether a suspect is in custody include: (1) the length of the questioning, (2) the location of the questioning, (3) the accusatory, or non-accusatory, nature of the questioning, (4) the amount of restraint on the individual's physical movement, and (5) statements made by officers regarding the individual's freedom to move or leave. *See United States v. Wright*, 777 F.3d 769, 775 (5th Cir. 2015).

Here, the record denotes—through both Fitzgerald and Tutt's sworn testimony at trial—that Tutt was not under arrest during his interview and was free to leave at any time. Accordingly, Tutt's voluntary interview with Fitzgerald, wherein he essentially admitted to the charges, was not a custodial interrogation. Ultimately, Tutt has neither shown that trial counsel was constitutionally ineffective for failing to file a motion to suppress his voluntary statements nor that the state habeas

11

court's rejection of this claim was unreasonable or contrary to federal law. This claim should be dismissed.

Turning to Tutt's claim that trial counsel was ineffective for failing to obtain expert witness testimony concerning his statements to Fitzgerald, complaints of uncalled witnesses are disfavored on federal habeas review because such allegations of what a proposed witness would have testified to are largely speculative. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). In order to show that counsel was ineffective for failing to call a witness, the petitioner must identify those witnesses and establish, by affidavit or otherwise, what those witnesses would have testified to at trial. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001). Further, the he must not only show that the witness testimony was favorable, but also that the witness would have actually testified at trial. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Here, Tutt neither identified an expert witness nor made any showing that expert witness testimony on the issue of his statements to Fitzgerald would have been favorable to his defense. While Tutt maintains that his mental state was at issue, he does not elaborate. *See Harper v. Lumpkin*, 19 F.4th 771, 778 (5th Cir. 2021) ("Conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)). Much like his first claim, Tutt has not shown that counsel was ineffective or that the state habeas court's rejection of this claim was unreasonable or contrary to federal law. This claim should be dismissed.

### b. Failure to File Motion to Sever

Tutt argues that trial counsel was ineffective for failing to file a motion to sever his guilty pleas from his not-guilty pleas. Specifically, he asserts that he was denied a fair trial because he pleaded guilty and not guilty in front of the jury.

However, Tutt's claim fails because he was not entitled to a severance. Under Texas law, "[a] defendant's right to sever two or more offenses that have been consolidated or joined for trial does not apply to a prosecution for indecency with a child or aggravated sexual assault of a victim under seventeen years of age unless the court determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses." *Matthews v. State*, 152 S.W.3d 723, 730 (Tex. App.—Tyler 2004, no pet.); *see also* Tex. Penal Code 3.03(b), 3.4(c) (2017). Texas courts have found that there is no presumption that consolidation is prejudicial; rather, the defendant has the burden to demonstrate how he would be unfairly prejudiced by the joinder. *See Nunez v. State*, 2019 WL 1831715, at *3 (Tex. App.—Corpus Christi, pet. ref'd) ("To be entitled to a severance, the defendant must show 'some type of prejudice beyond that which a defendant would automatically face in any case in which felony counts are joined.'") (internal citation omitted).

Here, Tutt was not entitled to a severance because he was charged with multiple counts of indecency with a child and aggravated sexual assault on a child less than seventeen years of age. Moreover, he has not shown that he was prejudiced by a consolidated trial; as Respondent indicates, the record illustrates ample evidence—including Tutt's voluntary confessions—of his guilt of all counts. A claim of ineffective assistance of counsel will fail "if the facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal." *See Green v. Lynaugh*, 868 F.2d 176, 177 (5th Cir. 1989); *see also Salazar v. Quarterman*, 260 F. App'x 643, 650 (5th Cir. 2007) (citing *Green*, 868 F.2d at 177) (unpublished); *Jones v. Jones*, 163 F.3d 285, 304 (5th Cir. 1998) (same). Coupled with the overwhelming evidence of his guilt, regardless of whether he pleaded guilty to certain charges or not, Tutt failed to show that the state habeas court's rejection of this claim was unreasonable or contrary to federal law. This claim should be dismissed.

2. Claims of Trial Court Error

Tutt states that the court violated his right to a fair trial because one of the State's interns "enters the room and [converses] with a juror." In his second claim of trial court error, Tutt complains that the trial court abused its discretion by denying his motion for a mistrial. The Court notes that Tutt does not elaborate on his claim with respect to his motion for a mistrial, and conclusory allegations are insufficient on federal habeas review. *See Harper*, 19 F.4th at 778 (5th Cir. 2021) (explaining that "[h]abeas petitions must 'specify all the grounds for relief available to petitioner" and "state the facts supporting each ground.") (citing *Mayle v. Felix*, 545 U.S. 644, 655 (2005)). These claims should be dismissed.

The record reflects that the prosecutor, Mr. Byrd, testified outside the presence of the jury regarding the intern issue. Specifically, Mr. Byrd testified about how the State's intern provided the jury with some plates for lunch:

> Ms. Coppedge handed the plates over to the alternate holding the door. At that time, not entering the room but still in the hallway, a jury member asked her, initiated questioning as to her name so that she could identify, put a name with the voice when she contacts our office. I'm left to assume that Mr. Dwight Brannon, senior counsel bar member of Upshur County has two secretaries that are on this jury today, I am left to assume that it would be one of those—one of those that initiated this contact with Ms. Coppedge. Ms. Coppedge only responded as to her first name as Catherine and then left and walked back to our office.

(Dkt. #10, pg. id. #380-81). The record further shows that Mr. Byrd was concerned the jury would have the impression that the District Attorney's Office provided lunch for the jurors, at which point he recommended the Court conduct individual questioning of each juror. After the Court did so, Tutt then moved for a mistrial, which was denied.

The Fifth Circuit has repeatedly held that claims of trial court error may justify federal habeas relief if the error "is of such magnitude as to constitute a denial of fundamental fairness under the due process clause." *See Krajcovic v. Director*, 2017 WL 3974251 at *6 (E.D. Tex. June

14

30, 2017) (quoting *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983)); *see also Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (To be actionable in federal court, the trial court error must have "had substantial and injurious effect or influence in determining the jury's verdict."). In other words, Tutt must show that he was prejudiced by the purported trial court error.

Here, the trial transcript demonstrates that each individual juror was questioned about the lunch plates—and each juror testified that his or her verdict was rendered based solely on the evidence presented, (Dkt. #10, pg. id. #384-401). Because each juror explained that the verdict was based solely on the evidence—and nothing else—Tutt cannot show prejudice. *See, e.g.*, *U.S. v. Bernard*, 299 F.3d 467, 476-77 (5th Cir. 2002) (finding that petitioner could not show prejudice when a passerby remarked to jurors that "[s]omeone is going to die in that trial today," as the remark was a "passing statement" of a member of the crowd and therefore minimally prejudicial). Moreover, given that each juror explained that his or her verdict was based solely on the evidence presented, Tutt cannot show that he was prejudiced by the denial of the motion for mistrial. This claim should be dismissed.

## VII. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, under 28 U.S.C. § 2253(c)(1), he must first obtain a certificate of appealability ("COA") from a circuit justice or judge. *Id.* Although Petitioner has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional

15

right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Supreme Court recently emphasized that the COA inquiry "is not coextensive with merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 137 S. Ct. 773 (quoting *Miller-El*, 537 U.S. at 336). Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012)).

Here, Tutt failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason. He also failed to demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings. He is not entitled to a certificate of appealability.

## RECOMMENDATION

Accordingly, it is recommended that Petitioner's federal habeas corpus petition be denied and that the case be dismissed, with prejudice. It is further recommended that Tutt be denied a certificate of appealability *sua sponte*.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 7th day of June, 2022.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE